WILLIAM R. TRACY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 82578. Promulgated December 13, 1938.

*Ernest B. Butler, C. P. A.*, and *Franklin D. Dougherty, Esq.*, for the petitioner.

*Philip A. Bayer, Esq.*, for the respondent.

\* \* \* \* \* \* \*

1368

TURNER: The respondent contends that the sales of General Motors common stock reflected in the special account constituted short sales within the meaning of section 23 (s) of the Revenue Act of 1932,[1] and that, as to the 22,400 shares which were delivered in 1932, the gain realized must be considered as gain from sales of stock which were not capital assets. The petitioner contends that all the sales reflected in the special account are long sales and that such sales made prior to 1932, to the extent of 20,400 shares, were closed transactions and not taxable in 1932, and further that the sale of 2,000 shares in January 1932 must be treated as a sale of capital assets.

The facts presented in the case of *du Pont* v. *Commissioner*, 98 Fed. (2d) 459, seem to be on all fours with the present case. There the taxpayer, more than two years prior to the taxable year, purchased certain shares of stocks which were left in the possession of his broker and carried in long accounts. Thereafter the taxpayer directed his broker to sell short, and his broker did sell short, the same number of shares of the same stocks as were deposited in his long accounts. The proceeds of the sales were credited by the broker to short accounts of the taxpayer. Subsequently and during the taxable year the broker, acting upon the taxpayer's instructions, transferred from his long accounts to his short accounts the necessary number of shares of stock to cover the short sales. In deciding that such sales constituted short sales, the court said:

> It will be observed that both transactions in the case at bar possessed, to a certain degree, a dual nature and reciprocal characteristics. When the petitioner covered the short sales by delivery of the securities held by him in the long accounts he disposed by one step of a long interest and of a short obligation. The price at which the short sales were made did in fact fix *t*ne price or value of the stock delivered by him from his long accounts. On the other hand, the sales made by the petitioner were short sales of the type known generally as "hedging sales" or "sales against the box." Such sales are made when the owner of stock desires to avoid the risk of future price fluctuations of stock owned by him. He has shares on hand and available but does not desire to dispose of them immediately for reasons which he deems sufficient. If the stock declines, he can cover at a profit. If the stock increases in value, he can deliver the shares which he owns and avoid loss.
>
> * * * * * * *
>
> It is true that the petitioner purchased the stock in his long account for purposes of profit, and to say that the profit realized did not come from his original investment would be untrue. The fact remains, however, that he moulded the

[1] SEC. 23. DEDUCTIONS FROM GROSS INCOME.

In computing net income there shall be allowed as deductions :

* * * * *

(s) SAME—SHORT SALES.—For the purposes of this title, gains or losses (A) from short sales of stocks and bonds, or (B) attributable to privileges or options to buy or sell such stocks and bonds, or (C) from sales or exchanges of such privileges or options, shall be considered as gains or losses from gains or exchanges of stocks or bonds which are not capital assets.

disposition of his long interest into the form and substance of short sales. When the petitioner once ordered his brokers to sell stock short, a covering process of some kind was inescapable. Had he covered the short sales by the purchase of securities upon the open market and had achieved a gain thereby, such a gain would have been the result of a short sale. Had he sold his long interest without relation to a short sale, the net gain, if any, would have been taxable solely under the provisions of Section 101 of the Revenue Act of 1932. But the petitioner has elected to make use of a short sales device to dispose of his long interest. It cannot be said that the sales made by the petitioner were short sales in form and not in substance for they were short sales in fact. * * *

In *Frances Bartow Farr, Executrix*, 33 B. T. A. 557, we held that where a taxpayer makes short sales of stock and thereafter covers such sales by delivering shares out of a quantity of stock which, on the date of the short sales he had held for more than two years, section 23 (s), *supra*, applies and the entire gain is taxable as ordinary income. In our discussion of short sales in that case we referred to three principal purposes for which the device is generally used in connection with securities, the third of which seems to fit the facts of the present case, and in respect of which we said the following:

* * * In the third class are short sales made for the purpose of "hedging." These are called also "sales against the box." They occur when an owner of stock resorts to a short sale in order to avoid the risk of future price fluctuations. He owns sufficient securities to make delivery, but chooses to make a short sale involving the borrowing of shares for delivery, rather than to sell and make the delivery of the shares which he owns. The owner of a large block of stock, which gives him a measure of control over the affairs of the corporation, may desire to take advantage of the current market price and yet retain his control in the corporation. He can accomplish his purpose by making a short sale. Later, if the stock declines, he can make a covering purchase and realize a profit, or, if the stock advances, he can make delivery of his own stock and lose control, or make a covering purchase and sustain a loss. Hedging is also resorted to by the "odd lot dealers" on the floor of the exchange in order to avoid the risk of owning a large block of stock. It is also adopted by professional speculators who seek to profit by buying in the cheaper and selling in the dearer market, where the same security is listed on two different exchanges. As authority for the statements in this paragraph, see Short Selling (1932) Meeker; The Work of the Stock Exchange (1922) Meeker; Short Selling (1933), Owen Taylor; Short Selling, For and Against (1932), Whitney and Perkins.

In the instant case the petitioner instructed his brokers to make the sales of General Motors stock in question for the special account, and not to sell any of such stock deposited in the regular account without giving him notice before doing so. It was agreed that the General Motors stock deposited in the regular account would not be sold unless it became necessary to do so for the brokers' protection and it apparently never became necessary because the brokers, within the time limits prescribed by the rules of the New York Stock Exchange, covered all sales in the special account with borrowed stock. We think the important point is that when the various sales of General Motors stock were made for the special account it was not contemplated by

either the petitioner or the brokers that a like number of shares of General Motors stock would be withdrawn from the regular account for delivery. The shares sold were unidentifiable at the time of the sale, there being no intention to sell the particular shares on deposit in the regular account. We think these facts bring the transactions in question within the meaning of short sales and on the authority of the cases cited we hold that section 23 (s), *supra*, applies and the entire gain realized from the sales of the 22,400 shares is taxable as ordinary income.

*Decision will be entered under Rule 50.*