In the Matter of FREEDOM FORD, INC., d/b/a Freedom Ford/Lincoln/Mercury, Debtor.

FREEDOM FORD, INC., d/b/a Freedom Ford/Lincoln/Mercury, Plaintiff,

v.

SUN BANK AND TRUST COMPANY, f/k/a Hernando Sun Bank, Defendant.

Bankruptcy No. 85–03043–8B1. Adv. No. 90–297.

United States Bankruptcy Court, M.D. Florida, Tampa Division.

May 19, 1992.

Russell M. Blain, Tampa, Fla., for plaintiff.

Jeffrey W. Warren, Tampa, Fla., Charlie Luckie, Jr., Brooksville, Fla., for defendants.

ORDER DENYING DEBTOR/PLAIN-
TIFF'S MOTION FOR SUMMARY
JUDGMENT AND GRANTING DE-
FENDANT'S MOTION FOR SUM-
MARY JUDGMENT

THOMAS E. BAYNES, Jr., Bankruptcy
Judge.

THIS CAUSE came on to be heard upon Debtor/Plaintiff's Motion for Summary Judgment and Defendant's Motion for Summary Judgment in the adversary proceeding brought by Freedom Ford, Inc. (Debtor), against Sun Bank and Trust Company (Bank), in a two-count Complaint. Count I is an action, pursuant to 11 U.S.C. § 548(a)(2), to recover an alleged fraudulent transfer from Debtor to the Bank, and Count II is an action, pursuant to 11 U.S.C. § 544(b) and Fla.Stat. § 726.01 (1989), to avoid a transfer between Debtor and the Bank.[1]

The Court, having reviewed the extensive briefs, affidavits, and depositions filed in support of the respective motions for summary judgment, finds as follows:

Debtor was a wholly owned subsidiary of Gulf Gateway, Inc. (Gulf Gateway). Prior to August 1985, John J. Maloney (Maloney) held, as trustee for the benefit of himself, Robert E. Sanctuary (Sanctuary), and Richard K. Cason (Cason), 51% of Gulf Gateway's issued and outstanding common stock. Maloney also held, as trustee for himself, Sanctuary, and Cason, 51% of the issued and outstanding common stock of Town & Country Ford, Inc.

Pursuant to an agreement dated July 24, 1985, Glenn O. Mortoro (Mortoro) was to purchase from Maloney a stock option respective to the stock held by Maloney in both corporations. The stock sale closed on August 13, 1985. The purchase was financed through a loan to Mortoro and his spouse (collectively, the Mortoros) by the Bank in the amount of $1.8 million. As part of this transaction, it appears Maloney, Cason, and Sanctuary loaned Debtor

$1.1 million, and these funds, together with $100,000 of Debtor's operating funds, were pledged to the Bank as security for the loan made to the Mortoros. Subsequently, the Mortoros defaulted on their loan obligation to the Bank and the Bank obtained the funds Debtor, Cason, Maloney, and Sanctuary had used to collateralize the loan.

On October 22, 1985, Debtor filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code (11 U.S.C.). Almost two years later, on September 11, 1987, Debtor filed its Plan of Reorganization and Disclosure Statement. On January 4, 1988, an Amended Disclosure Statement was filed and was subsequently approved by the Court on January 20, 1988. On July 11, 1988, the Plan of Reorganization was confirmed by the Court. Debtor then waited until June 4, 1990, to file this adversary proceeding seeking to avoid the transfer to the Bank of the $1.2 million pledged by Debtor as collateral for the Mortoro loan.

■ The Bank's initial defense goes to the time limitations imposed by 11 U.S.C. § 546(a) on debtors and trustees in bringing avoidance actions. The language of Section 546(a) is quite clear. An action brought under Section 548 must be commenced by the earlier of two years after the appointment of a trustee or the time the case is closed or dismissed. The Bank relies upon the opinion of the Court of Appeals for the Tenth Circuit in *Zilkha Energy Co. v. Leighton,* 920 F.2d 1520 (10th Cir.1990). There, in considering the application of the two-year limitation of Section 546(a), the Court stated:

We do not believe that Congress intended to limit actions filed by an appointed trustee to two years without making the same restriction apply to a debtor in possession who is the functional equivalent of an appointed trustee. Because of the

---

1. The Court dismissed Count II of the Complaint by an Order entered on October 29, 1990.

Therefore, this Order deals solely with issues raised under Count I.

virtual identity of function between a trustee and a debtor in possession, there would be no reason to create a different limitation period for the filing of actions by the two fiduciaries. Moreover, when the balance of § 546 is considered, it is even more apparent that Congress intended for the word "trustee" to apply to a debtor in possession, for every reference to actions brought by a trustee contained in § 546 obviously applies to actions brought by a debtor in possession. A contrary analysis would deprive § 546 of significance in the majority of recovery actions filed in Chapter 11 cases.

*Zilkha Energy Co.*, 920 F.2d at 1524. The Court of Appeals for the Tenth Circuit then goes on to "hedge against the box" [2] by acknowledging that such an analysis may not always work. *Zilkha Energy Co.*, 920 F.2d at 1524 n. 11.

This Court disagrees with the analysis of the Court of Appeals for the Tenth Circuit. The clear language of Section 546(a) provides where there is a debtor in possession that entity has until the case is closed or dismissed to bring an adversary proceeding under Section 548, unless some other equitable principles intervene. *Korvettes, Inc. v. Sanyo Electric (In re Korvettes, Inc.)*, 67 B.R. 730 (S.D.N.Y.1986); *Pate v. Hunt (In re Hunt)*, 136 B.R. 437 (Bankr. N.D.Tex.1991); *Pullman Constr. Indus. v. National Steel Serv. Ctr.*, 132 B.R. 359 (Bankr.N.D.Ill.1991); *Katon v. International Bank (In re Tamiami Range & Gun Shop)*, 130 B.R. 617 (Bankr.S.D.Fla. 1991); 4 Collier on Bankruptcy ¶ 546.02 (15th ed. 1992).

■ It follows from the above discussion that the doctrine of laches asserted as a defense by the Bank does not apply in this case. The time limitation placed upon a debtor in possession by Section 546(a)(2) constitutes a statute of limitations. Section 546(a)(2) places a definite time constraint upon a debtor in possession seeking to avoid an allegedly fraudulent transfer under Section 548. Since there is a statute of limitations applicable here, the equitable defense of laches is unavailing. *Gross v. Petty (In re Petty)*, 93 B.R. 208 (9th Cir. BAP 1988); *Korvettes, Inc.*, 67 B.R. at 730; *Mancuso v. Continental Bank Nat'l Ass'n Chicago (In re Topcor, Inc.)*, 132 B.R. 119 (Bankr.N.D.Tex.1991).

■ Although the Bank's laches defense is unavailing, Debtor is judicially estopped from proceeding against the Bank.[3] Judicial estoppel concerns the relationship between a party and the judicial system and "applies to preclude a party from assuming a position in a legal proceeding inconsistent with one previously asserted." *Oneida Motor Freight v. United Jersey Bank*, 848 F.2d 414, 419 (3d Cir.), *cert. denied*, 488 U.S. 967, 109 S.Ct. 495, 102 L.Ed.2d 532 (1988). *See also Pako Corp. v. Citytrust*, 109 B.R. 368 (D.Minn.1989); *Ohio Dept. of Taxation v. H.R.P. Auto Ctr. (In re H.R.P. Auto Ctr.)*, 130 B.R. 247 (Bankr.N.D.Ohio 1991).

In this case judicial estoppel is predicated upon Debtor's knowledge, through its principal, of the transfer pre-petition;[4] Debtor's failure to list the Bank in its schedules or on the matrix; Debtor's failure to disclose in its Disclosure Statement or Amended Disclosure Statement the potential adversary proceeding seeking to avoid the transfer; and Debtor's filing of the adversary proceeding almost two years after the confirmation of the Plan and many months after significant distribution was made pursuant to the Plan.

This Court agrees with the Court of Appeals for the Third Circuit that "a long-

**2.** *See Tracy v. Commissioner,* 38 B.T.A. 1366, 1370 (1938).

**3.** Although similar to judicial estoppel, equitable estoppel does not apply in this case since the Bank was not a party to the bankruptcy activities leading up to confirmation and, therefore, could not have detrimentally relied upon Debt-

or's disclosure statement or proposed plan. *Pako Corp. v. Citytrust,* 109 B.R. 368, 376 n. 2 (D.Minn.1989).

**4.** With full knowledge of the transaction which Debtor now seeks to avoid, Cason, Debtor's president, signed the petition in 1985 and has been substantially involved in the bankruptcy case.

standing tenet of bankruptcy law requires one seeking benefits under its terms to satisfy a companion duty to schedule, for the benefit of creditors, all his interests and property rights." *Oneida*, 848 F.2d at 416. In addition to the duty to schedule, the Court of Appeals for the Third Circuit stated:

> The preparing and filing of a disclosure statement is a critical step in the reorganization of a Chapter 11 debtor.... The importance of full disclosure is underlaid by the reliance placed upon the disclosure statement by the creditors and the court.

*Oneida*, 848 F.2d at 417.

■ Where a debtor in possession or Chapter 11 trustee has knowledge of prepetition transfers which may be avoided, that debtor or trustee has a duty to give notice to the transferee and to the court through the disclosure statement process of the intention to seek avoidance of the transfer. Otherwise, the court is not given an opportunity to consider the claim during the confirmation procedure and, as mentioned above, the transferee, especially in the instance where a potential claim is not readily foreseeable, does not have adequate opportunity to participate in the confirmation process,[5] file a claim, or seek the benefits available under Section 502(d).[6]

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that Debtor/Plaintiff's Motion for Summary Judgment is denied. It is further

ORDERED, ADJUDGED AND DECREED that Defendant's Motion for Summary Judgment is granted. It is further

ORDERED, ADJUDGED AND DECREED that this Court will enter a final judgment in accordance with these findings.

DONE AND ORDERED.

---

5. Failure to permit the Bank a chance to take part in the confirmation process also presents significant due process issues. *See Spring Valley Farms v. Crow (In re Spring Valley Farms)*, 863 F.2d 832 (11th Cir.1989).

6. A significant concern is how the Bank's possible claim under Section 502(d) could be handled given the fact that this Court, as early as 1988 and through 1990, had authorized the dis-tribution of funds from the estate. *See Katchen v. Landy*, 382 U.S. 323, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966) (claims of alleged preferential transferee can be neither allowed nor disallowed until preference litigation is resolved); *Campbell v. United States (In re Davis)*, 889 F.2d 658 (5th Cir.1989), *cert. denied*, 495 U.S. 933, 110 S.Ct. 2175, 109 L.Ed.2d 504 (1990); *In re Coral Petroleum*, 60 B.R. 377 (Bankr.S.D.Tex.1986).