**In re MICROAGE, INC., a Delaware corporation, et al., Debtors.**

**MicroAge, Inc., Appellant,**

**v.**

**Viewsonic Corporation, Appellee.**

**BAP No. AZ–02–1283–BLRYP.**
**Bankruptcy Nos. 00–03833, 00–3840 to 00–3850–ECF–CGC.**

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted Sept. 20, 2002.

Filed Oct. 23, 2002.

Amended Dec. 11, 2002.

504

Philip R. Rudd, Kutak Rock, LLP, Scottsdale, AZ, for Appellant.

Robert A. Franklin, Murray & Murray, Cupertino, CA, for Appellee.

Before BLUEBOND [1], RYAN and PERRIS, Bankruptcy Judges.

## AMENDED OPINION

BLUEBOND, Bankruptcy Judge.

After obtaining an order from the bankruptcy court that established a procedure for the treatment of reclamation claims in its chapter 11 [2] case, the debtor (appellant MicroAge, Inc.) entered into negotiations and eventually a stipulated settlement with a vendor (appellee Viewsonic Corporation) who had made a timely reclamation de-

1. Hon. Sheri Bluebond, Bankruptcy Judge for the Central District of California, sitting by designation.

2. Unless otherwise indicated, all chapter, section, and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330 and to the Federal Rules of Bankruptcy Procedure, Rules 1001–9036.

mand for goods that it asserted were worth $947,886.16. The order approving that settlement granted Viewsonic an "allowed reclamation administrative priority claim" for $574,024.90.

When MicroAge failed to pay Viewsonic's allowed administrative claim in a timely manner under its confirmed chapter 11 plan of reorganization, Viewsonic brought a motion to compel payment of the claim. MicroAge responded by filing (1) an adversary complaint against Viewsonic for avoidance of $2,329,700.56 in allegedly preferential transfers and (2) an opposition to Viewsonic's motion to compel in which MicroAge attempted to rely on 11 U.S.C. § 502(d).

The bankruptcy court held that § 502(d) cannot be used to bar payment of an administrative claim and ordered payment of Viewsonic's claim. MicroAge filed a timely appeal of this order.

For the reasons discussed below, we disagree with the bankruptcy court's conclusion that § 502(d) does not apply to administrative claims. However, because we agree that, on the facts of the instant case, § 502(d) is inapplicable, we nevertheless AFFIRM the bankruptcy court's order compelling payment of Viewsonic's allowed administrative claim.

## I. FACTS

The relevant facts are not in dispute. On April 13, 2000, MicroAge, Inc., and certain of its subsidiaries and affiliates, including Pinacor, Inc. (collectively, "MicroAge"), filed voluntary chapter 11 petitions. Five days later, on April 18, 2000, Viewsonic Corporation ("Viewsonic") served a reclamation demand for goods sold to MicroAge on credit that Viewsonic contends were worth $947,886.16.

On April 28, 2000, Viewsonic filed a "Complaint for: Reclamation of Goods; Turnover; Preliminary Injunction" against MicroAge. In its complaint, Viewsonic sought either the return of its reclaimed goods or an administrative priority claim for the value of the goods.

On the same date, MicroAge filed its "Motion for Order Denying Reclamation in Kind, Granting Administrative Claim in Lieu of Reclamation and for Approval of Procedure for Allowing Such Claims Pursuant to 11 U.S.C. § 546(c)." On May 17, 2000, Viewsonic filed a limited objection to MicroAge's motion in which Viewsonic noted that MicroAge's motion had misstated the time period for which goods may be reclaimed. Viewsonic did not otherwise oppose the relief requested by MicroAge's April 28, 2000 motion.

On May 23, 2000, the bankruptcy court entered its "Order Approving Motion for Order Denying Reclamation in Kind, Granting Administrative [sic] and for Approval of Procedure for allowing Such Claims Pursuant to 11 U.S.C. § 546(c)." In this order, the bankruptcy court denied requests for reclamation in kind and created a procedure pursuant to which MicroAge and creditors who served timely written reclamation demands were to enter into negotiations in an effort to agree upon the amount of an administrative claim to be allowed to the creditor in lieu of its right to reclaim goods. In the event that the parties were able to agree upon the amount of the administrative claim to be allowed, the order provided that the stipulation could be approved by the bankruptcy court without further notice or opportunity for hearing if no party in interest objected to the terms thereof within a period of 10 days after service of a written stipulation outlining the proposed settlement.

On June 26, 2000, MicroAge filed an answer to Viewsonic's complaint and settlement negotiations ensued, as contem-

plated by the bankruptcy court's May 23, 2000 order. These negotiations eventually produced a settlement that was memorialized in a stipulation filed with the bankruptcy court on or about September 21, 2001 (the "Settlement Stipulation"). Pursuant to the Settlement Stipulation, Viewsonic was to receive an "allowed reclamation administrative priority claim" for $574,024.90 and Viewsonic's adversary complaint was to be dismissed with prejudice. On October 29, 2001, the bankruptcy court entered an order approving the Settlement Stipulation and dismissing Viewsonic's adversary complaint with prejudice.

In the interim, the bankruptcy court confirmed a chapter 11 plan under which MicroAge, Inc. and certain of its subsidiaries and affiliates were substantively consolidated. The plan required MicroAge to pay allowed administrative claims within 10 days after the effective date of the plan.

When MicroAge failed to pay Viewsonic's allowed administrative claim in a timely manner, Viewsonic filed motions to compel MicroAge to pay this claim (the "Motion to Compel") on March 22, 2002 and April 2, 2002 [3].

MicroAge responded by filing, on April 12, 2002, an adversary complaint against Viewsonic to avoid and recover $2,329,700.56 in allegedly preferential transfers and, on April 26, 2002, an opposition to the Motion to Compel. In its opposition to the Motion to Compel, MicroAge argued that, by virtue of the provisions of 11 U.S.C. § 502(d), MicroAge should not be required to pay Viewsonic's allowed administrative claim unless and until MicroAge's preference claims against Viewsonic had been fully and finally resolved and Viewsonic had returned the full amount of any transfers found to be preferential.

The bankruptcy court conducted a hearing on the Motion to Compel on April 30, 2002 and took the matter under submission. On May 9, 2002, the bankruptcy court issued its "Under Advisement Decision Re: Viewsonic Corporation's Motion for Order Directing Payment of Administrative Claim" (the "Memorandum of Decision"). In its Memorandum of Decision, the bankruptcy court rejected MicroAge's argument that § 502(d) applied and concluded that MicroAge should be required to pay Viewsonic's allowed administrative claim. On May 20, 2002, MicroAge filed its Notice of Appeal. On May 30, 2002, the bankruptcy court entered an order consistent with the Memorandum of Decision directing MicroAge to pay Viewsonic's allowed administrative claim.

## II. ISSUE

Whether the bankruptcy court erred in granting Viewsonic's motion to compel payment of Viewsonic's administrative claim.

## III. STANDARD OF REVIEW

Whether 11 U.S.C. § 502(d) applies to administrative priority claims generally and, if so, whether MicroAge may rely on this section to defeat payment of an allowed administrative claim on the undisputed facts of this case are conclusions of law reviewed de novo. *See Onink v. Cardelucci (In re Cardelucci)*, 285 F.3d 1231, 1233 (9th Cir.2002) (statutory interpretation is a question of law subject to de novo review).

## IV. DISCUSSION

A. *The Bankruptcy Court's Holding*

Although it refused to permit MicroAge to rely on § 502(d) to defeat Viewsonic's

---

**3.** For reasons that are unclear, this motion was filed twice.

administrative claim, the bankruptcy court acknowledged that the "plain language" of the section seemed applicable: the administrative claim asserted by Viewsonic qualifies as a "claim" within the meaning of § 101(5) of the Bankruptcy Code; and Viewsonic is an "entity" that MicroAge contends is the transferee of a transfer that may be avoided under § 547 who has not yet returned the transfer. Notwithstanding the plain language of these sections, the bankruptcy court refused to permit MicroAge to rely on § 502(d) to defeat the Motion to Compel on the ground that such a "rigid reading of the statute does violence not only to the overall structure of sections 501 and 502, but also to section 546." *Memorandum of Decision*, p. 2 at lines 9–12.[4]

Following the holdings of Judges Walrath and Walsh of the District of Delaware in *In re Lids Corp.*, 260 B.R. 680 (Bankr. D.Del.2001) and *Camelot Music, Inc. v. MHW Advertising and Public Relations, Inc. (In re CM Holdings, Inc.)*, 264 B.R. 141 (Bankr.D.Del.2000), the bankruptcy court concluded that sections 501 and 502 apply only to claims for which proofs of claim must be filed. Entirely separate procedures set forth in § 503 of the Bankruptcy Code govern the treatment of requests for payment of expenses of administration. Therefore, with the exception of certain post-petition claims that § 502 expressly provides shall be allowed or disallowed as if they were prepetition claims,[5]

only prepetition claims are subject to the provisions of § 502.

The bankruptcy court also reasoned that the nature of Viewsonic's administrative claim would make the application of § 502(d) even more problematic in the instant case. Because Viewsonic received an administrative claim "in exchange for the surrender of substantive reclamation rights under section 546" [*Memorandum of Decision*, p. 3 at lines 1–2] that would not have been subject to § 502(d), permitting MicroAge to apply § 502(d) to defeat the payment of Viewsonic's administrative claim would undermine the protections that the Bankruptcy Code attempted to afford to reclaiming creditors.

Lastly, the bankruptcy court noted that, because the return of an avoidable transfer would increase the amount of a creditor's prepetition claim, it makes sense to require the return of that transfer before permitting a court to liquidate the allowed amount of the creditor's prepetition claim. In the bankruptcy court's view, this is the underlying purpose of § 502(d). As this rationale does not apply in the context of an administrative claim, which must be paid before any distributions are made on account of prepetition claims, there is no reason for § 502(d) to apply when the claim to be allowed or disallowed is an expense of administration.

As discussed in more detail below, there are a number of problems with the above analysis. Nevertheless, the bankruptcy court reached the right result on the facts

---

4.  In light of this ruling, the bankruptcy court noted that it was unnecessary for the court to decide whether the mere allegation that the claimant had received a preferential transfer would suffice to create a defense under § 502(d) or whether the debtor needed to obtain a judgment avoiding the transfer before it could rely on § 502(d). *Memorandum of Decision*, p. 3 at note 1. As we agree that § 502(d) is inapplicable in the instant case,

there is no need for us to reach this issue either.

5.  *See, e.g.*, 11 U.S.C. §§ 502(f) ("gap" claims in an involuntary case), 502(g) (rejection damage claims), 502(h) (claims arising from the recovery of property under §§ 522, 550 or 553) and 502(i) (claims for post-petition taxes that are entitled to priority under § 507(a)(8)).

of this case—namely, that MicroAge should not be permitted to rely upon § 502(d) to avoid having to pay Viewsonic's allowed administrative claim. Accordingly, this result is affirmed on alternate grounds.

B. *Can 11 U.S.C. § 502(d) Be Raised as a Defense to a Request for Payment of An Administrative Claim?*

■ No court within the Ninth Circuit has published an opinion on this issue. However, a number of bankruptcy courts in other circuits have analyzed this issue under the Bankruptcy Act and/or the Bankruptcy Code and have reached inconsistent results. For the reasons discussed below, we believe that the better analysis is that § 502(d) may be raised in response to the allowance of an administrative claim.

1. *Arguments Based on Statutory Construction*

Nothing in the plain language of § 502(d) limits its application to prepetition claims. Section 502(d) by its terms applies to "any claim" of an entity that received an avoidable transfer, and the definition of a "claim" in § 101(5) is sufficiently broad to include requests for payment of expenses of administration.[6] Further, there is no introductory language in § 502 that limits the application of the subsections that follow to claims for which proofs of claim must be filed or prepetition claims.

Viewsonic asserts that the term "claim" as used in § 502(d) should be read to exclude requests for payment of expenses of administration, but such a narrow construction of the term "claim" finds no support in the language of the Bankruptcy Code itself. To the contrary, various provisions of the Bankruptcy Code reveal that Congress viewed expenses of administration as merely one specialized type of claim. *See, e.g.*, 11 U.S.C. § 346(e) (referring to a "claim allowed under section 502(f) or 503 of this title"), 11 U.S.C. § 348(d) (excluding from certain treatment outlined in the section "any claim allowable under section 503(b)") and 11 U.S.C. § 365(n)(1)(B)(i) (referring to "any claim allowable under section 503(b) of this title"). Similar references appear in Bankruptcy Code §§ 546(b)(2)(A), 726(b), 726(c)(1) and (2), 1226(a)(1) and 1326(a)(2). Moreover, in numerous sections of the Bankruptcy Code, when Congress intended to exclude administrative claims from the application of a section, Congress explicitly did so. *See, e.g.*, 11 U.S.C. § 348(d) (excepting claims allowable under § 503(b)), 11 U.S.C. § 752(a) (excepting claims of the kind specified in § 507(a)(1)), 11 U.S.C. § 1123(a)(1) (same) and 11 U.S.C. § 1326(b)(1) (same). The fact that Congress chose not to include similar language in § 502(d) suggests that Congress did not mean to exclude administrative claims from the application of this section.

2. *Arguments Based on the Legislative History*

■ The legislative history of the section lends further support to the conclusion that § 502(d) applies to administrative claims. Courts interpreting the precursor to § 502(d), § 57g of the Bankruptcy Act, had applied its provisions to administrative claims, and the adoption of § 502(d) was not intended as a departure from existing law. H.R.Rep. No. 95–595, at 354 (1977); S.Rep. No. 95–989, at 65 (1978), U.S.Code

---

6. 11 U.S.C. § 101(5)(A) provides that the term, "claim," means a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured . . . ." 11 U.S.C. § 101(5)(A).

Cong. & Admin.News 1978, pp. 5963, 6309–10, 5787, 5851 ("Subsection (d) is derived from present law"). The normal rule of statutory construction is that, if Congress intends for legislation to change the interpretation of a judicially-created concept, it makes that intent specific. *Midlantic Nat'l Bank v. New Jersey Dept. of Envtl. Protection,* 474 U.S. 494, 501, 106 S.Ct. 755, 88 L.Ed.2d 859 (1986). No changes of law or policy should be interpreted from changes of language in revision of a statute unless the intent to make a change is clearly expressed. *Committee of Unsecured Creditors v. Commodity Credit Corp. (In re K.F. Dairies, Inc.),* 143 B.R. 734, 736 (9th Cir. BAP 1992). As no such intent was expressed, § 502(d), like its predecessor § 57g, should be applied to administrative claims.

Section 57g provided that, "[t]he claims of creditors who have received or acquired preferences, liens, conveyances, transfers, assignments or encumbrances, void or voidable under this title, shall not be allowed unless such creditors shall surrender such preferences, liens, conveyances, transfers, assignments or encumbrances." Law of July 1, 1898, ch. 541, § 57g, 30 Stat. 560 as amended (repealed 1979). Although the term, "creditor," is defined in the Bankruptcy Code in such a way as to exclude administrative claimants,[7] the same was not true under the Bankruptcy Act. Under the Bankruptcy Act, the term, "creditors," included holders of all types of claims of whatever character against the debtor or its property. *See City of New York v. New York, N.H. & Hartford R.R.*

*Co.,* 344 U.S. 293, 295–96, 73 S.Ct. 299, 97 L.Ed. 333 (1953); *Gardner v. New Jersey,* 329 U.S. 565, 572–73, 67 S.Ct. 467, 91 L.Ed. 504 (1947). Therefore, it is particularly significant that, when Congress drafted § 502(d), it made the section applicable not to claims of *creditors,* but to any claim of an *entity,*[8] thereby preserving the breadth of the section's application.

Therefore, of the various opinions that have been written on this issue, the ones that interpret § 502(d) in the same manner that courts had interpreted § 57g are the more persuasive. In *Tidwell v. Atlanta Gas Light Co. (In re Georgia Steel, Inc.),* 38 B.R. 829 (Bankr.M.D.Ga.1984), for example, a preference defendant sought to use an administrative claim as a setoff in an adversary proceeding to avoid a preferential transfer. The bankruptcy court refused to permit the setoff, on the ground that § 502(d) requires the recipient of a transfer that is avoidable under § 547 to return that transfer in its entirety before the transferee's claim may be allowed. In so doing, the bankruptcy court in *Georgia Steel* noted that, "[t]he fact that Atlanta Gas' claim is for an administrative expense has no bearing." *Georgia Steel,* 38 B.R. at 839. As support for this conclusion, the bankruptcy court explained that, "[s]everal courts have addressed this issue under section 57g of the Bankruptcy Act" and have held that "even if a claim was for a priority administrative expense, section 57g precluded allowance of the claim until the repayment of preferential transfers." *Id.* at 839–40 (citing, among other cases, *Weber v. Mickelson (In re Colonial Ser-*

---

**7.** According to § 101(10) of the Bankruptcy Code, a "creditor" is an entity that holds (1) a claim against the debtor "that arose at the time of or before the order for relief concerning the debtor," (2) a community claim or (3) one of a specified list of post-petition claims. *See* 11 U.S.C. § 101(10).

**8.** Pursuant to § 101(15), the term "entity" includes "person, estate, trust, governmental unit, and United States Trustee." Section 101(15) does not impose any limitations on the types of claims that one must assert in order to qualify as an entity. 11 U.S.C. § 101(15).

*vices Co.),* 480 F.2d 747 (8th Cir.1973) and *Hudson Feather & Down Products, Inc. v. B & B Assocs., Inc. (In re Hudson Feather & Down Products, Inc.),* 22 B.R. 247 (Bankr.E.D.N.Y.1982)).

In *Colonial Services,* the Eighth Circuit held that § 57g barred the allowance of an administrative claim for post-petition services until the claimant had returned a preferential transfer that he had received. According to the Eighth Circuit, "the plain, unequivocal language of the statute mandates surrender of a voided preference before a claim can be allowed, even if the claim is a priority claim." *Colonial Services,* 480 F.2d at 749 (citations omitted).

In *Hudson Feather,* B & B Associates filed an administrative claim for $10,499.50 for commissions due under a sales agency agreement. The debtor responded by filing an objection and asserting a "counterclaim" for $16,000 based on B & B's receipt of an allegedly preferential transfer. The claimant responded that § 57g should not apply to an administrative claim. The court in *Hudson Feather* rejected this argument and, following the reasoning of Colonial Services, held that § 57g applied to administrative as well as prepetition claims. *See Hudson Feather,* 22 B.R. at 252–53. *See also Irving Trust Co. v. Frimitt,* 1 F.Supp. 16 (S.D.N.Y.1932) (refusing to permit claimant to offset administrative claims against a fraudulent transfer because to do so would subvert § 57g, which requires transferees of avoidable transfers to surrender their transfers in full before their claims may be allowed); *In re Bob Grissett Golf Shoppes, Inc.,* 50 B.R. 598, 607 (Bankr.E.D.Va.1985) ("The language of section 502(d) is mandatory. . . . [T]he Court must condition allowance of any claim for administrative rent upon the Landlord's disgorging of the unauthorized and avoidable post-petition transfers.").

Congress is presumed to have known at the time it drafted § 502(d) that courts had interpreted § 57g in such a way as to be applicable to administrative claims. In the absence of a clear expression from Congress that it intended to alter existing law in this area, § 502(d) should be given a similarly broad application under the Bankruptcy Code.

Judges Walrath and Walsh found evidence of a Congressional intent to exclude administrative claims from the application of § 502(d) by negative implication. In *CM Holdings,* Judge Walsh looked at portions of § 502 that require certain types of post-petition claims to be allowed under § 502(a), (b) or (c), or disallowed under § 502(d), as if they had arisen prepetition,[9] and other instances in which the Bankruptcy Code explicitly excludes expenses of administration from treatment afforded to other types of claims, and found in these provisions a Congressional intent to treat post-petition claims differently from prepetition claims—even where the text of the Bankruptcy Code does not so specify.[10] *See CM Holdings,* 264 B.R. at 157–58.

---

**9.** More specifically, Judge Walsh identified §§ 502(e)(2) (claims for reimbursement or contribution that become fixed after the commencement of the case), 502(f) (claims that arise during the "gap" period in an involuntary case), 502(g) (rejection damage claims), 502(h) (claims arising from the recovery of property under §§ 522, 550 or 553) and 502(i) (post-petition priority tax claims of the kind referenced in § 507(a)(8)).

**10.** In *CM Holdings,* the bankruptcy court found further support for its conclusion that § 502(d) should not apply to administrative claims because the holder of an expense of administration does not qualify as a "creditor" under § 101(10). *See CM Holdings,* 264 B.R. at 158. However, the term "creditor" does not appear anywhere in § 502(d).

In *In re Lids,* Judge Walrath cited this reasoning with approval and restated the proposition more succinctly. According Judge Walrath, "Congress' inclusion of five post-petition claims to which section 502(d) expressly applies (none of which are applicable here) demonstrates that section 502(d) does not apply" to other types of post-petition claims that are not specifically mentioned anywhere in § 502. *Lids,* 260 B.R. at 683–84. While the structure of these code sections does provide some evidence of Congressional intent, the evidence of such intent is, at best, ambiguous, and therefore is not sufficiently clear to overcome the presumption that Congress intended to leave existing law unchanged.

### 3. *Arguments Based on The Policy Behind § 502(d)*

The bankruptcy court in the instant case also reasoned that § 502(d) should not be applied to administrative claims because the policy that led to adoption of the section would not be served by its application in this context. According to Judge Case, it makes sense to apply § 502(d) to a prepetition claim because the return of an avoidable transfer affects the amount of the prepetition claim. As a result, it would be premature for the bankruptcy court to determine the amount of a prepetition claim until the avoidable transfer had been returned. When the claim to be allowed is an administrative claim, however, this reasoning does not apply. The return of an avoidable transfer does not affect the amount of an administrative claim. Therefore, according to Judge Case, there is no justification for the application of § 502(d) to an administrative claim.

■ However, ease and finality of calculation is not the only policy objective served by the operation of § 502(d). According to the bankruptcy court in *In re Mid Atlantic Fund, Inc.,* 60 B.R. 604 (Bankr.S.D.N.Y.1986), "[t]he purpose of Code § 502(d) is to preclude entities which have received voidable transfers from sharing in the distribution of the assets of the estate unless and until the voidable transfer has been returned to the estate." *Id.* at 609. According to the Fifth Circuit, "[s]ection 502(d) is designed to assure an equality of distribution of the assets of the bankruptcy estate not create penalties for asserting a setoff right." *Campbell v. United States (In re Davis),* 889 F.2d 658, 662 (5th Cir.1989). Or, as the court put it in *Hudson Feather,* "[g]ood reasons can be found in the concern of the bankruptcy laws for the future viability of a debtor for requiring surrender of preferences, whatever the immediate economic effect, and whoever benefits therefrom." *Hudson Feather,* 22 B.R. at 253.

In the view of the Fifth Circuit in *Davis,* according to the legislative history and the policy behind § 502(d), "the section is intended to have the coercive effect of insuring compliance with judicial orders." *Davis,* 889 F.2d at 661. In the *Davis* case, the issue was whether the Internal Revenue Service could be compelled to pay tax refunds due the estate before litigation concerning the extent of a debtor's tax liability to the Service had been resolved. The district court had disallowed the Service's claims pursuant to § 502(d) when the Service failed to pay refunds due the estate within 5 days after the debtor's liability to the Service had been adjudicated. Reversing this result, the Fifth Circuit held that § 502(d) was designed to be triggered only "after a creditor has been afforded a reasonable time in which to turn over amounts adjudicated to belong to the bankruptcy estate." *Davis,* 889 F.2d at 662. As the Fifth Circuit found that the Service had not been given a reasonable time to pay amounts due, it refused to

apply § 502(d) to bar allowance of the Service's claims.

Why should a transferee who is obligated to return an avoidable transfer to the estate be permitted to further deplete the estate's resources by receiving payment of a claim of any kind without first being required to return the avoidable transfer? If the objective behind § 502(d) is to encourage transferees to return avoidable transfers to the estate, that objective would be best served by applying § 502(d) to transferees of both administrative and prepetition claims.

Courts who have rejected the application of § 502(d) to administrative claims have relied in part on their perception that it would be detrimental to a debtor's reorganization efforts for administrative claims to be subject to § 502(d). In *Lids*, for example, the court expressed concern as to the "devastating effects" that the extension of § 502(d) to administrative claims could have on a debtor's ability to reorganize. According to the court in *Lids*, "[i]f trade vendors felt that a preference could be used to prevent the payment of their administrative claims, they would be extremely reluctant to extend post-petition credit to a chapter 11 debtor." *Lids*, 260 B.R. at 684. But how realistic is this concern? [11] No one has suggested that an administrative claimant should be exempt from suit under the avoiding power sections of the Bankruptcy Code. Any creditor that has received an avoidable transfer may find itself compelled to return that transfer, whether it does business with the reorganized debtor or not. Doing business with the debtor does not increase this risk, it merely provides another source of repayment for the estate in the form of an offset against, or the disallowance of, an administrative claim if the vendor is later found to have such liability under an avoiding power theory. [12]

### C. *Should MicroAge be Permitted to Raise § 502(d) as a Defense to Payment of Viewsonic's Administrative Claim in the Instant Case?*

Although the bankruptcy court erred when it held that § 502(d) does not apply to claims for expenses of administration generally, the bankruptcy court was nevertheless correct in its conclusion that § 502(d) is unavailable on the specific facts of this case. MicroAge raised this argument too late: section 502(d) should have been raised as an affirmative defense before the bankruptcy court entered an order allowing Viewsonic's claim. Now that the claim has been allowed, MicroAge may not raise § 502(d) as a bar to payment.

The bankruptcy court entered an order establishing a procedure for resolving dis-

---

**11.** And, of course, it goes without saying that, even if this concern were well-founded, it would be inappropriate for a bankruptcy court to refuse to apply an otherwise mandatory provision of the Bankruptcy Code simply because application of the section might adversely impact the debtor in possession's ability to reorganize.

**12.** Although § 502(d) contemplates the return of an avoidable transfer in its entirety, rather than merely an offset of a portion of an avoidable transfer against amounts that would otherwise be due the claimant, when § 502(d) is applied to an administrative claim against a solvent estate, the difference between a traditional setoff and the application of § 502(d) may have little practical significance, as amounts due in both directions are likely to be paid at the rate of 100 cents on the dollar. Rather than go through the exercise of exchanging checks for the full amount due in each direction, the parties are likely to agree voluntarily to net out the amount of the preference against the administrative claim. *See Bob Grissett Golf Shoppes*, 50 B.R. at 607 (applying the provisions of § 502(d) to a landlord's administrative rent claim, but noting that, as a practical matter, the court would offset the amount of the avoidable transfer against the amount that would otherwise be allowed as administrative rent).

putes concerning reclamation claims on May 23, 2000. For at least the next year, MicroAge and Viewsonic were engaged in negotiations concerning the amount of the administrative claim that Viewsonic would be entitled to assert. These negotiations eventually produced the Settlement Stipulation, which was approved by the bankruptcy court by order entered October 29, 2001.

■ Paragraph 1 of that order provides that, "Viewsonic shall have an allowed reclamation administrative priority claim in the amount of $574,024.90." Order Authorizing and Approving Settlement of Viewsonic Corporation's Reclamation Claim (Oct. 29, 2001), at 1. MicroAge first raised an argument based on § 502(d) in response to Viewsonic's motion to compel payment of an administrative claim that the bankruptcy court had already allowed. On these facts, MicroAge cannot rely on § 502(d) to defeat the allowance of Viewsonic's administrative claim. Allowed claims are beyond the reach of § 502(d).

In *In re Service Plastics*, 1997 Bankr.LEXIS 1667, 1997 WL 657119 (Bankr.N.D.Ill.1997), Cameo, the defendant/transferee, attempted to obtain summary judgment against the reorganized debtor in a preference action on the ground that the action had not been brought by a deadline set forth in the debtor's confirmed plan of reorganization. In response, the reorganized debtor argued, among other things, that Cameo's claims against the estate should be disallowed pursuant to § 502(d) even if the reorganized debtor's preference action was time-barred. Although the court agreed that, ordinarily, a debtor may raise § 502(d) as a defense to the allowance of a claim even after the statute of limitations for commencing avoiding power actions has run, the court in *Service Plastics* held that, on these facts, it was too late for the reorganized debtor to raise § 502(d) to defeat the allowance of Cameo's claim because Cameo's claim had already been allowed:[13] "Cameo's claim is an allowed claim, which is no longer subject to a challenge by Service Plastics. Service Plastics is precluded by the Plan from raising any defenses, including those in § 502(d) to Cameo's proof of claim." *Service Plastics*, 1997 WL at *10.

If MicroAge had not completed its analysis of avoiding power actions at the time it entered into the Settlement Stipulation and wanted to reserve for a later date the ability to assert rights under § 502(d), it should have included appropriate language in the stipulation to this effect. It did not do so. Instead, MicroAge expressly agreed that Viewsonic's administrative claim should be allowed for an amount certain, and the court entered an order making such an allowance. On these facts, MicroAge waived whatever right it would otherwise have had to raise § 502(d) to defeat the allowance of Viewsonic's administrative claim. That claim has already been allowed. MicroAge cannot now avoid paying that allowed claim by raising a defense under § 502(d).[14]

## V. CONCLUSION

Cases interpreting the precursor to § 502(d), § 57g of the Bankruptcy Act,

---

**13.** The plan of reorganization confirmed in *Service Plastics* contained a deadline for the filing of objections to claims, which had passed. As a result, Cameo's claim had been deemed allowed due to the reorganized debtor's failure to file a timely objection to Cameo's claim.

**14.** It is worthy of note, however, that, pursuant to § 502(j) of the Bankruptcy Code, a claim that has been allowed or disallowed may be reconsidered for cause, according to the equities of the case. Of course, MicroAge has not sought reconsideration of the allowance of Viewsonic's claim, and, were it to do so, the bankruptcy court might well conclude

routinely interpreted this section as applicable to post-petition or administrative claims. As we lack clear evidence of a Congressional intent to depart from this interpretation, § 502(d) should be interpreted in a manner that is consistent with case law decided under the Bankruptcy Act and should be applied to administrative claims.

Nevertheless, the bankruptcy court did not err in refusing to apply § 502(d) on the facts of this case. Section 502(d) may not be used to defeat an administrative claim that has already been allowed.

Accordingly, we AFFIRM the bankruptcy court's order requiring MicroAge to pay Viewsonic's allowed administrative claim.

that the equities of the case do not weigh in favor of the granting of such a motion. If it is later called upon to weigh the equities of this case, the bankruptcy court might wish to consider, among other factors, MicroAge's delay in asserting rights under § 502(d) and the fact that Viewsonic received an allowed administrative claim as a substitute for rights of reclamation that would not have been affected by the operation of § 502(d).