07-1362-bk
*In Re: Ames Dep't. Stores, Inc.*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

August Term, 2008

(Argued: August 29, 2008          Decided: September 18, 2009)

Docket No. 07-1362-bk

───────────────────────────────

IN RE: AMES DEPARTMENT STORES, INC.,

*Debtor*,

───────────────────────────────

ASM CAPITAL, LP,

*Appellant*,

−v.−

AMES DEPARTMENT STORES, INC.,

*Debtor-Appellee.*

───────────────────────────────

Before:      CALABRESI and B.D. PARKER, *Circuit Judges.**

───────────────────────────────

Appellant ASM Capital, LP, appeals from an order of the United States District Court for the Southern District of New York (Kaplan, J.) affirming an order of the United States Bankruptcy Court for the Southern District of New York (Gerber, J.) that applied section 502(d) of the Bankruptcy Code to disallow a request for payment of administrative expenses until ASM's predecessor in interest returned a preferential transfer. We hold that section 502(d) does

---

* The Honorable Sonia Sotomayor, originally a member of the panel, was elevated to the Supreme Court on August 8, 2009. The two remaining members of the panel, who are in agreement, have determined the matter. *See* 28 U.S.C. § 46(d); Local Rule 0.14(2); *United States v. Desimone*, 140 F.3d 457 (2d Cir. 1998).

not bar allowance of administrative expenses within the scope of section 503(b).  VACATED and REMANDED.

ROBERT J. BUTLER (Rebecca L. Saitta, *on the brief*), Wiley Rein LLP, McLean, Virginia, *for appellant.*

MARTIN J. BIENENSTOCK (Michele J. Meises, *on the brief*), Weil, Gotshal & Manges LLP, New York, New York, *for debtor-appellee.*

*Per Curiam*:

This appeal raises the question of whether section 502(d) of the Bankruptcy Code, which

bars allowance of certain claims filed against the debtor's estate by alleged recipients of

preferential transfers, also bars allowance to such a claimant of postpetition administrative

expenses pursuant to section 503(b) of the Bankruptcy Code.  We conclude that it does not, and

consequently we vacate the order of the district court.

I.        BACKGROUND

A.        Facts

The debtor-appellee Ames Department Stores, Inc. was a large chain of department stores

(collectively, "Ames"), that commenced a voluntary case under chapter 11 of the Bankruptcy

Code on August 20, 2001 by filing a petition in the United States Bankruptcy Court for the

Southern District of New York (Gerber, J.).  A year later, in August 2002, Ames's board of

directors determined that the value of the bankruptcy estate could be best maximized through an

orderly dissolution of Ames's affairs in chapter 11 and obtained an order from the bankruptcy

court allowing Ames to close its businesses and sell its assets.

Appellant ASM Capital, LP ("ASM") is an investor in distressed debt.  In 2002 and 2003,

ASM acquired claims against Ames's bankruptcy estate from various of Ames's creditors,

including two claims held by G&A Sales, Inc. ("G&A"), a supplier to Ames: an administrative expense claim of $360,117.65, and a reclamation claim of $33,292.50 (collectively, the "G&A Claims").[1] Administrative expenses are the "actual, necessary costs and expenses of preserving the estate," such as rent, wages, insurance, utilities, and trade credit, that arise during the pendency of the debtor's bankruptcy case. *See* 11 U.S.C. § 503(b)(1)(A). A reclamation claim provides a supplier with a right to reclaim goods that a customer received on credit while insolvent in the period just before commencement of bankruptcy proceedings. *See* 11 U.S.C. § 546(c); *cf.* U.C.C. § 2-702. At the time of Ames's bankruptcy filing, a court could deny reclamation to a seller with a section 546(c) reclamation claim by instead granting the seller's claim priority as a section 503(b) claim, or by securing the claim with a lien.[2]

_____

[1] ASM also acquired claims from Delaware Ribbon Manufacturers, Commonwealth Wholesale Corp., The Washington Post, and Williamson-Dickie Mfg. Co. Those claims eventually were allowed by the bankruptcy court and are not at issue in this appeal.

[2] Prior to 2005, section 546(c) provided that:

> (c) Except as provided in subsection (d) of this section, the rights and powers of a trustee under sections 544(a), 545, 547, and 549 of this title are subject to any statutory or common-law right of a seller of goods that has sold goods to the debtor, in the ordinary course of such seller's business, to reclaim such goods if the debtor has received such goods while insolvent, but—
>
> (1) such a seller may not reclaim any such goods unless such seller demands in writing reclamation of such goods—
> (A) before 10 days after receipt of such goods by the debtor; or
> (B) if such 10-day period expires after the commencement of the case, before 20 days after receipt of such goods by the debtor; and
>
> (2) the court may deny reclamation to a seller with such a right of reclamation that has made such a demand only if the court—

Ames had suspended payment on its administrative expense claims in 2002 when it abandoned its efforts to reorganize and decided to liquidate.  Sometime thereafter, Ames filed adversarial proceedings ("Preference Actions") against several of its former suppliers and other creditors, including G&A, to recover alleged preferential transfers.  In 2004, while Preference Actions were still pending, Ames began making interim distributions to holders of administrative expense claims, but refused to make distributions to holders who (a) were defendants in a Preference Action; (b) acquired their claims from a defendant in a Preference Action; or (c) would not agree to sign a release form fixing the amount of their administrative expenses.  Ames refused to make interim distributions to ASM on the ground that ASM's predecessors in interest were defendants in Preference Actions.

ASM moved the bankruptcy court on April 6, 2005 for an order allowing its administrative expenses in the amount of $964,587 and compelling Ames to pay that amount within fifteen days of entry of the order or when Ames paid other administrative expense claim holders.  Ames opposed the motion on the ground that section 502(d) of the Bankruptcy Code barred payments on ASM's claims until the return of any preferential transfers received by the

(A) grants the claim of such a seller priority as a claim of a
    kind specified in section 503(b) of this title; or
(B) secures such claim by a lien.

11 U.S.C. § 546(c) (1998).
    In 2005, Congress amended the Bankruptcy Code to include a new section 503(b)(9), which allowed a seller of goods to assert an administrative expense for "the value of any goods received by the debtor within 20 days before" the commencement of bankruptcy proceedings, and amended section 546(c)(2) to provide that "[i]f a seller of goods fails to provide notice in the manner described in paragraph (1), the seller still may assert the rights contained in section 503(b)(9)."  Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, § 1227, 119 Stat. 23, 199–200.  Neither party has suggested that section 503(b)(9) has any relevance to this appeal, and we do not specifically address its interaction with section 502(d).

creditors with whom the claims had originated, notwithstanding that ASM had not itself received any preferential transfers and was not a defendant in any Preference Action.

Before the bankruptcy court ruled on the motion in December 2005, the Preference Actions against nearly all of ASM's predecesors-in-interest were resolved, so that only the action against G&A remained outstanding. The bankruptcy court allowed ASM's claims that had originated with creditors who no longer were defending a Preference Action, but ruled that section 502(d) of the Bankruptcy Code barred allowance of the claims ASM had acquired from G&A until the Preference Action against G&A was resolved and G&A had paid or disgorged the amount, if any, for which G&A was liable to Ames.

ASM appealed the 2005 Order to the United States District Court for the Southern District of New York (Kaplan, J.), but the district court dismissed the appeal for lack of finality and failure to meet the requirements for interlocutory appeals. ASM tried again in September 2006, by moving the bankruptcy court to enter a supplemental order (i) disallowing ASM's administrative expenses pursuant to section 502(d) of the Bankruptcy Code; (ii) directing immediate payment of its reclamation claim; and (iii) declaring that the supplemental order was final and appealable. The bankruptcy court denied that motion in an order issued on December 1, 2006 (the "2006 Order"), but did make supplemental factual findings relating to finality.

In those findings, the bankruptcy court explained that it had intended its 2005 Order to mean that the G&A Claims held by ASM "would be temporarily disallowed until each of two things had happened: that (1) the [Preference Action] against G&A was 'resolved'; and (2) G&A had paid the amount (or turned over any property), if any, that had been judicially determined to be payable to the Ames estate." Since then, the court found, the Preference Action had finally

5

been resolved by entry of a default judgment against G&A on June 19, 2006 in the amount of $825,138. But the bankruptcy court's disallowance pursuant to section 502(d) remained in effect because the repayment requirement "remains unsatisfied—as the judgment has not been collected upon." The court further found that the disallowance "will likely be permanent" because G&A had filed its own petition for Chapter 11 reorganization, suspended its business, and had transferred all of its assets to a secured creditor, thereby making it "highly unlikely" Ames would ever collect on the judgment.

ASM timely appealed the bankruptcy court's 2006 Order to the district court. This time, with the benefit of the bankruptcy court's additional findings, the district court concluded that, "while the disallowance of ASM's claim under section 502(d) of the code nominally is temporary, in practical effect it is final."[3] The district court then affirmed the bankruptcy court's order on the merits, stating that it was "in complete agreement" with the bankruptcy court that section 502(d) of the Bankruptcy Code applied to administrative expense claims.

ASM moved the district court to certify an interlocutory appeal of its order, and simultaneously filed a petition with this Court for permission to appeal from the district court's order pursuant to Federal Rule of Appellate Procedure 5 and 28 U.S.C. § 1292(b). The district court denied ASM's certification motion without prejudice to renewal if this Court concluded that the order appealed from was not final. ASM then filed a Notice of Appeal to this Court. On May 8, 2007, a panel of this Court denied ASM's petition for permission to appeal, and directed the parties to address in their briefs whether the order appealed from is a final order.

---

[3] The district court also ruled in the alternative that, if the court of appeals decided the finality issue differently, it would grant ASM leave to file an interlocutory appeal.

## II.   DISCUSSION

### A.   Standard of Review

We exercise plenary review over the orders of a district court functioning in its capacity as an appellate court in a bankruptcy case. Thus, we independently review the factual findings and legal conclusions of the bankruptcy court. *Momentum Mfg. Corp. v. Employee Creditors Comm. (In re Momentum Mfg. Corp.)*, 25 F.3d 1132, 1136 (2d Cir. 1994). The bankruptcy court's legal conclusions are evaluated *de novo*; its findings of fact are subject to a clearly erroneous standard. *Id.*; *see also* Fed. R. Bankr. P. 8013. We will determine that a finding is "clearly erroneous" when we are left with the definite and firm conviction that a mistake has been made. *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948).

### B.   Jurisdiction

We have jurisdiction pursuant to 28 U.S.C. § 158(d) to hear this appeal from a decision of the district court exercising its bankruptcy appellate jurisdiction because that decision and the underlying bankruptcy court decision both are final orders within the meaning of 28 U.S.C. § 158. *See Shimer v. Fugazy (In re Fugazy Express, Inc.)*, 982 F.2d 769, 775 (2d Cir. 1992) ("The district court's own decision of an appeal from the bankruptcy court is not a final decision for purposes of appeal to the court of appeals unless the order of the bankruptcy court was final.").

It is true, as Ames argues, that the bankruptcy court's 2006 Order formally prevents ASM from pursuing its claim for administrative expenses only temporarily, until G&A Sales has satisfied the default judgment it owes to Ames. But "[i]t is sometimes appropriate that the requirement of finality be given a practical rather than a technical construction," *In re Am.*

7

*Preferred Prescription, Inc.*, 255 F.3d 87, 93 (2d Cir. 2001) (quotation marks omitted), and the practical effect of the bankruptcy court's order here will be to permanently bar allowance of ASM's claim because it is not likely that Ames will ever recover its judgment against G&A. As Ames acknowledges, G&A filed for chapter 11 reorganization in the United States Bankruptcy Court for the Central District of California on May 6, 2003, and its case was closed (without a discharge) on May 31, 2005. The bankruptcy court in this case concluded that "there [was] no reasonable likelihood" that Ames would ever collect its judgment against G&A Sales and the district court agreed, finding that "while the disallowance of ASM's claim under section 502(d) of the code nominally is temporary, in practical effect it is final because the condition . . . simply is not likely ever to be satisfied." Although Ames says that it still hopes to collect its judgment against G&A and has hired a firm to pursue that collection, it has not identified any assets from which recovery might be had. Moreover, Ames's lackadaisical efforts in the Preference Action against G&A, which sat for three years without appearance by G&A before Ames moved for entry of a default judgment, counsel against deferring consideration of this appeal. Accordingly, we conclude that the 2005 Order is a final order for purposes of this appeal.

C.     The Scope of Section 502(d)

Whether section 502(d) of the Bankruptcy Code bars the allowance of administrative expense claims under section 503 is a question of first impression in this Circuit. The district court and bankruptcy court both held that section 502(d), which disallows bankruptcy claims of certain entities until they have returned any voidable preferential payments or transfers from the debtor's estate, applies to allowance of administrative expenses under section 503. Both courts therefore agreed that section 502(d) bars allowance of ASM's G&A claims until G&A satisfies

8

the default judgment that Ames obtained against it in the Preference Action.  We disagree.

### 1.	Statutory Language

"Statutory interpretation always begins with the plain language of the statute," *Universal Church v. Geltzer*, 463 F.3d 218, 223 (2d Cir. 2006), which we consider in "the specific context in which that language is used, and the broader context of the statute as a whole," *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997).  We turn to the legislative history only when "the plain statutory language is ambiguous or would lead to an absurd result."  *Universal Church*, 463 F.3d at 223.

Accordingly, we begin with the language of section 502(d), which provides in full:

> Notwithstanding subsections (a) and (b) of this section, the court shall disallow any claim of any entity from which property is recoverable under section 542, 543, 550, or 553 of this title or that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of this title, unless such entity or transferee has paid the amount, or turned over any such property, for which such entity or transferee is liable under section 522(i), 542, 543, 550, or 553 of this title.

11 U.S.C. § 502(d).

The courts below first determined that requests for payment of administrative expenses under section 503 are "claims" within the meaning of the Bankruptcy Code, which in section 101(5) defines that term to include any "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured."  11 U.S.C. § 101(5)(A).  The courts then held that, because section 502(d) explicitly encompasses "*any claim* of any entity from which property is recoverable," 11 U.S.C. § 502(d) (emphasis added), it applies to administrative expenses.

Both lower courts endorsed the reasoning of the United States Bankruptcy Appellate

9

Panel of the Ninth Circuit in *MicroAge, Inc. v. Viewsonic Corp.* (*In re MicroAge, Inc.*), 291 B.R. 503 (B.A.P. 9th Cir. 2002). *See also Movitz v. Baker* (*In re Triple Star Welding, Inc.*), 324 B.R. 778, 794 (B.A.P 9th Cir. 2005) (applying *MicroAge*), *abrogated on other grounds by Dye v. Brown* (*In re AFI Holding, Inc.*), 530 F.3d 832 (9th Cir. 2008). The eponymous debtor in *MicroAge* had negotiated a settlement with a seller that had asserted a reclamation claim for goods alleged to be worth $947,886. *MicroAge*, 291 B.R. at 504–05. The order approving that settlement granted the seller an "allowed reclamation administrative priority claim" for $574,025. *Id.* But then MicroAge failed to pay the seller's claim in a timely manner, and the seller brought a motion to compel payment. MicroAge opposed that motion by filing an adversary complaint alleging the seller had received $2,329,701 in preferential transfers, which it sought to avoid, and then arguing that section 502(d) precluded allowance of the administrative claim until the preference action was resolved. *Id.* at 505. The United States Bankruptcy Court for the District of Arizona rejected that argument and ordered MicroAge to pay the seller's administrative claim, holding that section 502(d) did not apply to administrative claims under section 503. On appeal, the Ninth Circuit Bankruptcy Appellate Panel disagreed and held that section 502(d) generally was a valid defense to allowance of administrative claims, but nevertheless affirmed on the ground that it was too late for section 502(d) to be applied to the seller's claim because the claim already had been allowed. *Id.* at 512–13.

In determining the scope of section 502(d), the bankruptcy appellate panel first noted that section 502(d) "by its terms applies to 'any claim' of an entity that received an avoidable transfer, and the definition of a 'claim' in § 101(5) is sufficiently broad to include requests for payment of expenses of administration." *Id.* at 508. The language of other provisions in the Bankruptcy

Code, according to the bankruptcy appellate panel, further suggests that "Congress viewed expenses of administration as merely one specialized type of claim," and that Congress thus intended such expenses to be subject to section 502(d). *Id.* (*citing* 11 U.S.C. § 346(e) (referring to a "claim allowed under section 502(f) or 503 of this title"), and 11 U.S.C. § 365(n)(1)(B)(i) (referring to "any claim allowable under section 503(b) of this title")). Similarly, the explicit exclusion of administrative claims from some sections but not from section 502(d) suggested to the bankruptcy appellate panel that the claims are intended to be subject to section 502(d). *Id.* (*citing* 11 U.S.C. § 348(d) (excepting claims allowable under § 503(b)), 11 U.S.C. § 752(a) (excepting claims of the kind specified in § 507(a)(1)), 11 U.S.C. § 1123(a)(1) (same) and 11 U.S.C. § 1326(b)(1) (same)).

As other courts have noted, however, other sections of the Bankruptcy Code distinguish between "claims" and requests for administrative expenses under section 503(b). *See, e.g.*, *In re Plastech Engineered Products, Inc.*, 394 B.R. 147, 157–58 (Bankr. E.D. Mich. 2008) (citing cases holding that section 502(d) uses "claim" to refer only to prepetition claims and not to requests for administrative expenses); *Beasley Forest Products, Inc. v. Durango Ga. Paper Co.* (*In re Durango Ga. Paper Co.*), 297 B.R. 326, 329–31 (Bankr. S.D. Ga. 2003) (discussing instances where "expenses" are distinguished from "claims" in subchapter including sections 502 and 503)); *In re Lids Corp.*, 260 B.R. 680, 683–84 (Bankr. D. Del. 2001) (noting sections of code that distinguish between prepetition, postpetition, and administrative claims)*; Camelot Music, Inc. v. MHW Adver. & Public Relations, Inc.* (*In re CM Holdings, Inc.*), 264 B.R. 141, 159 (Bankr. D. Del. 2000) (same). For instance, section 507(a) refers to "expenses *and* claims," and establishes a separate priority for "administrative expenses" than for "claims." 11 U.S.C.

§ 507(a) (emphasis added). Section 101(10) defines "creditor" in terms that include only holders of prepetition claims (and certain postpetition claims deemed to be prepetition claims) and not holders of postpetition claims for administrative expenses under section 503. 11 U.S.C. § 101(10). And section 348(d) similarly applies to any postpetition claim "other than a claim specified in section 503(b)." 11 U.S.C. § 348(d). As the United States Bankruptcy Court for the District of Delaware concluded in *CM Holdings*, the express exclusion of administrative expense claims from section 348(d), and the exclusion of administrative claim holders from the definition of "creditor," lend "support to the view that administrative expense claims are claims that are entitled to distinct treatment separate and apart from pre-petition, or deemed pre-petition, creditor claims." *CM Holdings*, 264 B.R. at 158. Thus, the general definition of "claim" in section 101(5) does not by itself resolve the scope of section 502(d).

The structure and context of section 502(d) suggests that Congress intended it to differentiate between claims and administrative expenses, and not to apply to the latter. Section 502, in conjunction with section 501, provides a procedure for the allowance of claims that is entirely separate from the procedure for allowance of administrative expenses under section 503. Section 501, which is titled "Filing of proofs of claims or interests," provides that a creditor may file a proof of claim. 11 U.S.C. § 501(a). Although the definition of "claim" in section 101(5) does not distinguish between prepetition and postpetition rights to payment, the claims addressed by section 501 are only prepetition claims and certain postpetition claims that are treated as prepetition claims. *See* 11 U.S.C. § 501(d) (providing that postpetition claims specified in sections 502(e)(2), (f), (g), (h) or (i) may be filed under section 501 "the same as if such claim were a claim against the debtor and had arisen before the date of the filing of the petition"); *see*

12

*also* 11 U.S.C. § 101(10) (defining "creditor" as a holder of a prepetition claim or a deemed prepetition claim). Section 502, which is titled "Allowance of claims or interests," governs the allowance of claims for which proof is filed under section 501. Under section 502(a), such claims are deemed allowed when filed unless a party in interest objects, in which case section 502(b) requires the court to provide notice and a hearing and then determine the allowable amount of the claim. Because claims for administrative expenses may not be filed under section 501,[4] they are not subject to sections 502(a) and (b).

Both the filing of requests for payment of administrative expenses and the allowance thereof are governed by section 503, which is titled "Allowance of administrative expenses." The procedure is independent from the procedure for filing and allowance of prepetition claims under sections 501 and 502, and differs in significant respects. *See In re Durango Ga. Paper Co.*, 297 B.R. at 329 (observing that section 503 differs from section 502 because it "needs no complement" and uses different terminology). Whereas section 501 allows only "creditors" (i.e. holders of prepetition claims) to file proofs of claims, section 503(a) provides that any "entity" may file a request for payment of administrative expenses. Similarly, while section 502 requires notice and a hearing for a prepetition claim only if there is an objection to the claim, section 503(b) requires notice and a hearing on all requests for administrative expenses, regardless of whether any objection has been made. Section 503(b) also enumerates the types of administrative expenses allowable under section 503 and excludes "claims allowed under section

---

[4] For instance, the official form for filing a proof of claim pursuant to section 501 explicitly states "This form should not be used 'to make' a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503." *See* Official Bankruptcy Form B 10 (Dec. 2007) *available at* www.uscourts.gov/rules/BK_Forms_Pending_2008/B_010_1208v4.pdf (last visited September 9, 2009).

13

502(f)," i.e., deemed prepetition claims in an involuntary case that are subject to sections 501 and 502. *Id.* Thus, with respect to the allowance of claims, sections 502 and 503 are separate and independent.

The language of section 502(d) suggests that it applies only in the context of section 502, and not to claims addressed by section 503. Section 502(d) provides that, "[n]otwithstanding subsections (a) and (b) of this section," the court shall disallow any claim of an entity from whom property is recoverable under certain avoidance provisions of the Bankruptcy Code, unless the entity has returned the recoverable property. The plain language thus introduces section 502(d) as an exception to the automatic allowance of proofs of claims under sections 502(a) and (b), and suggests that the subsection's scope is limited to that process and does not extend to claims allowable under section 503. That suggestion is reinforced by the absence from section 502(d) of any reference to section 503. "To construe § 502(d)'s disallowance as applicable to expenses allowable under § 503—a section with its own scope, purpose, and conditions—is to expand the scope of § 502(d)'s disallowance beyond its plain meaning." *In re Durango Ga. Paper Co.*, 297 B.R. at 330.

Furthermore, sections 502(e)(2), (f), (g), (h) and (i) explicitly bring certain postpetition claims within the scope of section 502 by providing, in each case, that the claims "shall be allowed under subsection (a), (b), or (c) of this section, or disallowed under subsection (d) . . . *the same as if such claim had become fixed before the date of the filing of the petition*." *E.g.*, 11 U.S.C. § 502(e)(2) (emphasis added). The express invocation of section 502(d) suggests that the section did not already apply to such claims before they were brought within section 502's reach, and that it does not apply to postpetition claims remaining outside section 502, such as the

14

requests for administrative expenses addressed by section 503(b). *See In re Lids Corp.*, 260 B.R. at 683–84 ("Congress'[s] inclusion of five post-petition claims to which section 502(d) expressly applies . . . demonstrates that section 502(d) does not apply to other post-petition claims."); *In re CM Holdings, Inc.*, 264 B.R. at 158 & n.8 ("The express reference to, and treatment of, these other types of postpetition claims within the purview of § 502(d) suggests by negative implication that the drafters did not intend that administrative expense claims be subject to the set off provision of § 502(d)."). The clarifying final phrase—"*the same as if such claim had become fixed before the date of the filing of the petition*"—is further evidence that section 502(d), like sections 502(a) and (b), ordinarily applies only to prepetition claims.

Finally, the mandatory terms in which section 503(b) is drafted, requiring courts to allow requests for administrative expenses, suggest a conflict with section 502(d)'s equally mandatory disallowance of claims. Section 502(d) avoids a similar conflict with sections 502(a) and (b) by expressly providing that it applies "[n]otwithstanding subsections (a) and (b) of this section." Ames contends that there is no conflict with section 503(b) because that section requires notice and a hearing, at which the debtor could invoke section 502(d) as an affirmative defense. But section 502(b) also requires notice and a hearing, and section 502(d) expressly provides that it takes precedence over that section while saying nothing about section 503(b).

### 2. Statutory Context

Moreover, the context of these provisions in the Bankruptcy Code counsels in favor of holding section 502(d) inapplicable to administrative expenses under section 503(b).

First, the Bankruptcy Code establishes a clear division between an entity in its pre- and post-petition states. Administrative expenses arise post-petition, and generally cannot be set off

against prepetition claims. *Cf.* 11 U.S.C. § 553 (allowing offset of mutual prepetition debts between creditor and debtor). Second, and more importantly, the Bankruptcy Code gives a higher priority to requests for administrative expenses than to prepetition claims in order to encourage third parties to supply goods and services on credit to the estate, to the benefit of all of the estate's creditors. *See* 11 U.S.C. § 506(c). That intent would be frustrated by allowing a debtor automatically to forestall or avoid payment of administrative expenses by alleging that the vendor had been the recipient of a preferential transfer.[5] As the United States Bankruptcy Court for the District of Delaware observed in *Lids*, "[i]f trade vendors felt that a preference could be used to prevent the payment of their administrative claims, they would be extremely reluctant to extend post-petition credit to a chapter 11 debtor." 260 B.R. at 684.

These policies confirm our conclusion that Congress did not intend section 502(d) to apply to administrative expenses under section 503(b).[6]

---

[5] The court in *In re MicroAge* discounted this policy concern because "[a]ny creditor that has received an avoidable transfer may find itself compelled to return that transfer, whether it does business with the reorganized debtor or not." 291 B.R. at 512. But doing business with the reorganized debtor and filing a request for payment of administrative expenses might have other consequences, such as waiving the vendor's right to a jury trial in any preference action initiated by the debtor. *See Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 58–59 & n.14 (1989) (holding defendant to a preference action has a right to a jury trial pursuant to the Seventh Amendment of the United States Constitution, but that right can be waived by filing a claim in the bankruptcy proceedings); *In re CBI Holding Co.*, 529 F.3d 432, 438 (2d Cir. 2008) (holding claimant waived right to jury trial on claims brought against it on behalf of bankruptcy estate "when it submitted its Proof of Claim against the estate and subjected itself to the equitable powers of the bankruptcy court"). Moreover, it generally will be more attractive for a debtor to assert section 502(d) as an affirmative defense than for the debtor to initiate suits for the return of preferential transfers, particularly when the alleged transfers are small in relation to the expected costs of the suit.

[6] Contrary to Ames's position, we are not persuaded that the legislative history to section 502(d) indicates a Congressional intent to apply that section to administrative expenses pursuant to section 503, and we find the legislative history at most to be inconclusive. The Congressional reports issued in connection with the enactment of the Bankruptcy

16

## III.    CONCLUSION

Pursuant to the above analysis of the relevant statutory language, both in its specific context and in the "broader context of the statute as a whole," *Robinson,* 519 U.S. at 341, we hold that section 502(d) does not apply to administrative expenses under section 503(b).  In view of this conclusion, we find it unnecessary to reach ASM's alternative argument that, even if

Reform Act of 1978 state only that section 502(d) was "derived from present law," and "requires disallowance of a claim of a transferee of a voidable transfer *in toto* if the transferee has not paid the amount or turned over the property received as required under the sections under which the transferee's liability arises."  S. Rep. No. 95-989, at 65, *reprinted in* 1978 U.S.C.C.A.N. 5787, 5851; H.R. Rep. No. 95-595, at 354, *reprinted in* 1978 U.S.C.C.A.N. 5963, 6310.  Neither report discusses whether section 502(d) was meant to apply to administrative expenses pursuant to section 503.

Ames contends that the law from which section 502(d) was derived, section 57g of the Bankruptcy Act, Ch. 541, § 57g, 30 Stat. 560 (repealed 1978) (formerly codified at 11 U.S.C. § 93g) ("The claims of creditors who have received or acquired preferences, liens, conveyances, transfers, assignments or encumbrances, void or voidable under this title, shall not be allowed unless such creditors shall surrender such preferences, liens, conveyances, transfers, assignments, or encumbrances."), was understood to apply to requests for administrative expenses, and that the legislative history to section 502(d) therefore should be understood to indicate that Congress intended that section also to apply to administrative expenses.  But the Supreme Court stated as late as 1966 that "[t]he exact reach of s. 57, sub. g is not entirely settled," *Katchen v. Landy*, 382 U.S. 323, 330 n.5 (1966), and the reach of the section was not settled any further between that decision and the adoption of the Bankruptcy Code in 1978.

During that period, the only Court of Appeals to address the question was the United States Court of Appeals for the Eighth Circuit, which, in *Weber v. Mickelson (In re Colonial Servs. Co.)*, 480 F.2d 747 (8th Cir. 1973), held that section 57g of the Bankruptcy Act extended to administrative expenses.  The *Colonial Services* opinion rested its conclusion upon "the plain, unequivocal language of the statute"—which Congress changed in section 502(d)—and the 1932 decision of the United States District Court for the Southern District of New York in *Irving Trust Co. v. Frimitt*, 1 F. Supp. 16, 17 (S.D.N.Y. 1932).  *Colonial Services*, 480 F.2d at 749.  But there is no indication that the applicability of section 57g to the creditors' claims was a disputed issue in *Irving Trust*, and the court's statement that each of the creditors had filed a "proof of claim" in the bankruptcy proceeding, presumably pursuant to section 57 of the Act, suggests that it was not.  *Irving Trust,* 1 F. Supp. at 17.  Accordingly, *Colonial Services* is weak authority for the proposition that Congress understood section 57g of the Bankruptcy Act to apply to administrative expenses and intended new section 502(d) of the Bankruptcy Code to apply to such requests as well.

section 502(d) did extend to administrative expenses under section 503(b), it could be invoked only against the recipient of the alleged preferential transfer and not against a subsequent holder of a claim that originated with the alleged transferee.

We therefore VACATE the decision of the district court and REMAND with instructions to remand to the bankruptcy court for further proceedings consistent with this opinion.