15-2480
*In re LightSquared Inc.*

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

## SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 22nd day of March , two thousand sixteen.

PRESENT:  RALPH K. WINTER
                    RICHARD C. WESLEY,
                    CHRISTOPHER F. DRONEY
                            *Circuit Judges.*

_____

SANJIV AHUJA,

                            *Appellant,*

        -v.-                                                                15-2480

LIGHTSQUARED INC., FORTRESS CREDIT
OPPORTUNITIES ADVISORS, LLC,[1]

_____

[1] A question arose post-argument as to whether Fortress Credit Opportunities Advisors, LLC ("Fortress") is a party to this appeal. Despite being served with all relevant

1

LIGHTSQUARED INVESTORS HOLDINGS INC.,
ONE DOT FOUR CORP., ONE DOT SIX CORP.,
SKYTERRA ROLLUP LLC, SKYTERRA ROLLUP
SUB LLC, SKYTERRA INVESTORS LLC, TMI
COMMUNICATIONS DELAWARE, LIMITED
PARTNERSHIP, LIGHTSQUARED GP INC.,
LIGHTSQUARED LP, ATC TECHNOLOGIES, LLC,
LIGHTSQUARED CORP., LIGHTSQUARED
FINANCE CO., LIGHTSQUARED FINANCE CO.,
LIGHTSQUARED NETWORK LLC,
LIGHTSQUARED INC. OF VIRGINIA,
LIGHTSQUARED SUBSIDIARY LLC,
LIGHTSQUARED BERMUDA LTD., SKYTERRA
HOLDINGS (CANADA) INC., SKYTERRA
HOLDINGS (CANADA) INC., SKYTERRA
(CANADA) INC., ONE DOT SIX TVCC CORP.

*Debtors-Appellees*,

JPM INVESTMENT PARTIES, HARBINGER
CAPITAL PARTNERS LLC, CENTERBRIDGE
PARTNERS, L.P.

*Appellees*.

_____

| | |
|---|---|
| FOR APPELLANT: | BIJAN AMINI (Avery Samet, Jeffrey Chubak, *on the brief*), Storch Amini & Munves PC, New York, NY |
| FOR APPELLEES: | ANDREW M. LEBLANC (Michael L. Hirshfeld, *on the brief*), Milbank, Tweed, Hadley & McCloy LLP, New York, NY. |

moving papers filed in connection with this case, Fortress never took action to remove itself. We agree with the Appellant that Fortress is a party to this appeal.

2

Appeal from the United States District Court for the Southern District of New York (Forrest, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED,**

**ADJUDGED AND DECREED** that the order of the district court is **AFFIRMED.**

Appellant Sanjiv Ahuja ("Ahuja") appeals from an opinion and order of the United States District Court for the Southern District of New York (Forrest, *J.*), affirming the ruling of the United States Bankruptcy Court for the Southern District of New York (Chapman, *J.*).  We assume the parties' familiarity with the underlying facts, the procedural history, and the issues presented for review, which we reference only as necessary to explain our decision to affirm for substantially the same reasons stated by the district court.

LightSquared[2] is a provider of wholesale mobile satellite communications and broadband services.  In May 2012, LightSquared filed for bankruptcy under Chapter 11 of the Bankruptcy Code after the Federal Communications

---

[2] "LightSquared" is a company that consists of twenty-seven entities.  For the remainder of this order, the term "LightSquared" refers collectively to the twenty Chapter 11 debtors: LightSquared Inc., LightSquared LP, LightSquared Investors Holdings, SkyTerra Rollup LLC, SkyTerra RollupSub LLC, SkyTerra Investors LLC, TMI Communications Delaware, Limited Partnership, LightSquared GP Inc., ATC Technologies, LLC, LightSquared Corp., LightSquared Finance Co., LightSquared Network LLC, LightSquared Inc. of Virginia, LightSquared Subsidiary LLC, LightSquared Bermuda Ltd., SkyTerra Holdings (Canada) Inc., SkyTerra (Canada) Inc., Inc., One Dot Four Corp., One Dot Six Corp and One Dot Six TVCC Corp.

Commission ("FCC") effectively suspended its valuable licenses for certain terrestrial operations. The bankruptcy court confirmed LightSquared's Modified Second Amended Joint Plan (the "Plan") for reorganization in an oral decision, which was then affirmed on appeal to the district court. *See In re LightSquared, Inc.*, 534 B.R. 522, 525 (S.D.N.Y. 2015).

Under the Plan as approved, no common equity holder of LightSquared Inc. would receive any recovery, meaning that Ahuja, who held 8% of the common equity in LightSquared Inc., would receive no value in the reorganization. Ahuja argues that the Plan should not have been confirmed because (1) it does not satisfy 11 U.S.C. § 1129(b)'s fair and equitable rule, and (2) it does not satisfy 11 U.S.C. § 1123(a)(4)'s equal treatment rule. LightSquared rebuts each of Ahuja's arguments in turn; it also argues that Ahuja's appeal should be dismissed as equitably moot.

## I. Mootness

Equitable mootness is a prudential doctrine under which a court may in its discretion dismiss a bankruptcy appeal "when, even though effective relief could conceivably be fashioned, implementation of that relief would be inequitable." *In re Chateaugay Corp.*, 988 F.2d 322, 325 (2d Cir. 1993) ("*Chateaugay I*"). The

doctrine requires courts to "carefully balance the importance of finality in bankruptcy proceedings against the appellant's right to review and relief." *In re Charter Commc'ns, Inc.*, 691 F.3d 476, 481 (2d Cir. 2012).

A bankruptcy appeal is presumed equitably moot when the debtor's reorganization plan has been substantially consummated. *Id.* at 482. "Substantial consummation," as defined by section 1101(2) of the Bankruptcy Code, requires "(A) transfer of all or substantially all of the property proposed by the plan to be transferred; (B) assumption by the debtor or by the successor to the debtor under the plan of the business or of the management of all or substantially all of the property dealt with by the plan"; and "(C) commencement of distribution under the plan." 11 U.S.C. § 1101(2). The presumption of equitable mootness can be overcome, however, if all five of the "*Chateaugay* factors" are met:

> (1) "the court can still order some effective relief";

> (2) "such relief will not affect the re-emergence of the debtor as a revitalized corporate entity"

> (3) "such relief will not unravel intricate transactions so as to knock the props out from under the authorization for every transaction that has taken place and create an unmanageable, uncontrollable situation for the Bankruptcy Court"

(4) "the parties who would be adversely affected by the modification have notice of the appeal and an opportunity to participate in the proceedings"

(5) "the appellant pursued with diligence all available remedies to obtain a stay of execution of the objectionable order if the failure to do so creates a situation rendering it inequitable to reverse the orders appealed from."

*In re Chateaugay Corp.,* 10 F.3d 944, 952–53 (2d Cir. 1993) ("*Chateaugay II*") (internal citations, quotations, and alterations omitted); *In re Charter Commc'ns, Inc.,* 691 F.3d at 482. "The *Chateaugay* factors ensure that there is no *per se* equitable mootness by requiring a court to examine the actual effects of the requested relief." *In re Charter Commc'ns, Inc.,* 691 F.3d at 482.

In December 2015, after the bankruptcy court and district court confirmed the Plan, the FCC granted LightSquared's application for approval of the "change of control" of its FCC licenses, the final step in the substantial consummation of the Plan. Accordingly, LightSquared filed a motion to dismiss the present appeal as equitably moot in which it argued that Ahuja cannot overcome the presumption of equitable mootness. In rebuttal, Ahuja concedes that the Plan is now substantially consummated, but argues that he can overcome the presumption of mootness under *Chateaugay II*.

6

Ahuja has met his burden of showing that the first, fourth, and fifth factors for overcoming the presumption of mootness are met in this case. *See Chateaugay II*, 10 F.3d at 952–53; *In re Charter Commc'ns, Inc.*, 691 F.3d at 484–86. The first factor is satisfied because "it is not impossible to grant [Ahuja] relief, in the sense that the appeal[] [is] not constitutionally moot." *In re Charter Commc'ns, Inc.*, 691 F.3d at 484. The fourth factor is met because the parties that would be adversely affected—namely, the new investors in reorganized LightSquared—are "parties to this appeal" and "participated actively in the bankruptcy proceedings." *Id.* Ahuja satisfied the fifth factor because he diligently sought a stay in the bankruptcy court, district court, and on appeal, and moved for an expedited appeal. *See id.*; *see also In re Metromedia Fiber Network, Inc.*, 416 F.3d 136, 144 (2d Cir. 2005) ("A chief consideration under *Chateaugay II* is whether the appellant sought a stay . . .").

Ahuja argues that second and third factors are also met because this Court can still order effective relief without "affect[ing] the re-emergence of the [LightSquared] as a revitalized corporate entity" or "knock[ing] the props out from under the authorization for every transaction that has taken place" in three ways: (1) by vacating the confirmation order, (2) by redistributing the equity in

7

reorganized LightSquared, or (3) by awarding monetary damages. *Chateaugay II*, 10 F.3d at 952–53. We reject Ahuja's first and second proposed forms of relief because we find that vacating the confirmation order and redistributing the equity in reorganized LightSquared is not the type of relief that can be undertaken without knocking the props out from under completed transactions or affecting the reemergence of the debtor from bankruptcy. *See Chateaugay II*, 10 F.3d at 952–53.

We are convinced, however, that this Court can order at least some effective relief in the form of monetary damages in this case—even as little as one dollar—without knocking the props out from under the completed transaction or affecting reorganized LightSquared's reemergence as a revitalized corporate entity.[3] This conclusion finds direct support in *Chateaugay II*, where we recognized that some effective relief could be granted when an appellant "would readily accept some fractional recovery that does not impair [the] feasibility [of the bankruptcy plan] or affect parties not before this Court, rather than suffer the

---

[3] While we find that monetary damages can be awarded in accordance with the *Chateaugay* factors in the context of this specific case, in other cases, a court may find that it could not grant monetary relief without unwinding the reorganization plan or otherwise undermining the existence of the *Chateaugay* factors. *See, e.g., In re Charter Commc'ns, Inc.*, 691 F.3d at 485 (finding that the court could not grant monetary damages to an appellant asserting a misclassification claim without unwinding the reorganization plan and reclassifying creditors).

mootness of its appeal as a whole." 10 F.3d at 954. We determined that we could "fashion effective relief" by remanding with instructions to the bankruptcy court to order the return of any funds that were erroneously disbursed, so long as "that can be done manageably and without imperiling [the debtor's] fresh start." *Id.* at 953. Likewise, in this case, Ahuja has signaled his willingness to accept some fractional recovery in the form of monetary damages, and we could fashion such relief without disturbing the Plan or affecting reorganized LightSquared's fresh start.[4]

While Ahuja has overcome the presumption of equitable mootness, a remand to assess is not necessary in this case. *See Chateaugay II*, 10 F.3d at 954, 961 (declining to dismiss the appeal as equitably moot where the appellant could

---

[4] In reaching this conclusion, we find additional support in two particularly instructive cases. First, in considering an equitable mootness challenge, the Ninth Circuit observed that it must "ask whether there are any forms of even partial relief that could be provided without unraveling the [bankruptcy] plan." *In re Transwest Resort Props., Inc.*, 801 F.3d 1161, 1172–73 (9th Cir. 2015). Noting that "[l]ogically, the value of" the appellant's claim "was worth somewhere between nothing and $39 million," the court concluded that there was "no reason why, if the court were to devise a remedy that required Reorganized Debtors to pay [the appellant] one dollar, for example, the plan would be undone." *Id.* at 1173. The Fifth Circuit reached the same conclusion. *See In re Texas Grand Prairie Hotel Realty, L.L.C.*, 710 F.3d 324, 328 (5th Cir. 2013). The court held that it "could grant partial relief to [the appellant] without disturbing the reorganization, by, for example . . . granting a small money judgment." *Id.* at 328. The court noted that there was "no credible evidence that granting such fractional relief would require unwinding any of the transactions undertaken pursuant to the reorganization plan." *Id.*

be awarded monetary damages, but nevertheless refusing to grant relief on the merits because the challenged reorganization plan complied with the Bankruptcy Code). As set forth above, the Plan was fair and equitable, and complies with the equal treatment rule. To the extent that Ahuja wishes to assert claims to monetary damages other than the fair and equitable and equal treatment claims raised here, he has waived those claims by failing to raise them before us, the district court, or the bankruptcy court. *See Otal Invs. Ltd. v. M/V Clary*, 673 F.3d 108, 120 (2d Cir. 2012) (declining to consider arguments not raised in district court in light of "well-established general rule" that court of appeals will not consider an issue raised for first time on appeal).

## II. Confirmation of the Plan

"We look through the district court to the bankruptcy court's decision . . ." *In re DBSD N. Am., Inc.*, 634 F.3d 79, 94 (2d Cir. 2011). We independently review the bankruptcy court's legal conclusions *de novo* and its factual findings for clear error. *In re Ames Dep't Stores, Inc.*, 582 F.3d 422, 426 (2d Cir. 2009) (per curiam).

### A. Fair and Equitable

Confirmation of a plan over the vote of a dissenting class requires that the plan be "fair and equitable, with respect to each class of claims or interest that is

10

impaired under, and has not accepted, the plan." 11 U.S.C. § 1129(b)(1). While

the Bankruptcy Code "does not define the full extent of 'fair and equitable,'" it

does "include[] a form of the absolute priority rule as a prerequisite." *In re*

*DBSD*, 634 F.3d at 94. That is, in order to be "fair and equitable" to a common

equity holder, a reorganization plan must meet the following two requirements:

> (i) the plan provides that each holder of an interest of such class receive or retain on account of such interest property of a value, as of the effective date of the plan, equal to the greatest of the allowed amount of any fixed liquidation preference to which such holder is entitled, any fixed redemption price to which such holder is entitled, or the value of such interest; or
>
> (ii) the holder of any interest that is junior to the interests of such class will not receive or retain under the plan on account of such junior interest any property.

11 U.S.C. § 1129(b)(2)(C).

Ahuja does not assert that the absolute priority rule was violated by

distributions to creditor classes junior to his class; nor could he, as his class was

indisputably the most junior. Instead, Ahuja argues that the Plan is not fair and

equitable because senior creditors were paid more than their claims were worth.

Specifically, Ahuja contends that the bankruptcy court failed to properly value

reorganized LightSquared, thereby overpaying some senior creditors with

undervalued equity in reorganized LightSquared producing an "equity cushion"

11

that ought to have resulted in a distribution to common equity holders of LightSquared Inc.

We find that the Plan is fair and equitable to the common equity holders of LightSquared Inc. The absolute priority rule is not violated where, as here, no claim junior to Ahuja's was paid before his claim. Moreover, the bankruptcy court did not err, let alone clearly err, in concluding that reorganized LightSquared did not have an equity cushion sufficient to pay the claims of LightSquared Inc. common equity holders. The bankruptcy court's conclusion was premised on extensive factual findings, including, *inter alia*, the significant regulatory risks involved.

### B. Equal Treatment

The Bankruptcy Code provides that any reorganization plan must "provide the same treatment for each claim or interest of a particular class, unless the holder of a particular claim or interest agrees to a less favorable treatment of such particular claim or interest." 11 U.S.C. § 1123(a)(4). Ahuja contends that the Plan violates this requirement "[f]or the same reasons" that it violates the fair and equitable treatment rule.

Even accepting Ahuja's contention that he did not waive his equal treatment argument by failing to raise it before the bankruptcy court at the confirmation hearing, it fails on the merits. The Plan cancels the interests of all common equity holders in LightSquared Inc., including Harbinger Capital Partners LLC ("Harbinger") and Ahuja. Harbinger received value in the reorganization not for its common equity interests, but rather for its secured claim against LightSquared Inc. and the causes of action against third parties that it agreed to attribute to reorganized LightSquared. Thus, the Plan "provide[d] the same treatment for each claim or interest of [the common equity holder] class" with respect to LightSquared Inc. common equity holders, comporting with the equal treatment rule. 11 U.S.C. § 1123(a)(4).

We have considered Ahuja's remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

13